FILED
10-08-2026
Anna Maria Hodges
Clerk of Circuit Court
2026CV009212
Honorable Timothy Witkowiak-22
Branch 22

| STATE OF WISCONSIN | CIRCUIT COURT | MILWAUKEE COUNTY |
|---|---|---|

JANE DOE,

Plaintiff,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, UNIVERSITY OF WISCONSIN – MILWAUKEE, SARATH PRATAPAGIRI, LANDMARK BARS, INC. d/b/a LANDMARK LANES, VYACHESLAV TUZHILKOV a/k/a SLAVA TUZHILKOV, RANDY DOE, BRENDAN HOOVER, HEAVEN'L PARKER, ABC INSURANCE COMPANY and DEF INSURANCE COMPANY,

Defendants.

Case No.:
Case Code: 30107
(Personal Injury – other)

## SUMMONS

**THE STATE OF WISCONSIN**

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an answer that does not follow the requirements of the Statutes. The answer must be sent in writing to the Court, 901 N. 9th Street, Milwaukee, WI 53233 **AND** to the attorneys for the Plaintiff, Nathaniel Cade Jr., CADE LAW GROUP LLC, whose address is PO Box 170887, Milwaukee, WI 53217. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the Court may grant judgement against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgement may be enforced as provided by law. A judgement awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated this 8th day of October 2026.

**CADE LAW GROUP LLC**
Attorneys for Plaintiff

By: *Electronically signed by Nathaniel Cade, Jr.*
Nathaniel Cade, Jr. SBN 1028115
Annalisa Pusick SBN 1116379
PO Box 170887
Milwaukee, WI 53217
P: (414) 255-3802
F: (414) 255-3804
E: nate@cade-law.com
E: annalisa@cade-law.com

FILED
10-08-2026
Anna Maria Hodges
Clerk of Circuit Court
2026CV009212
Honorable Timothy Witkowiak-22
Branch 22

STATE OF WISCONSIN CIRCUIT COURT MILWAUKEE COUNTY

JANE DOE,

Plaintiff,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF WISCONSIN SYSTEM, UNIVERSITY OF WISCONSIN – MILWAUKEE, SARATH PRATAPAGIRI, LANDMARK BARS, INC. d/b/a LANDMARK LANES, VYACHESLAV TUZHILKOV a/k/a SLAVA TUZHILKOV, RANDY DOE, BRENDAN HOOVER, HEAVEN'L PARKER, ABC INSURANCE COMPANY and DEF INSURANCE COMPANY,

Defendants.

Case No.:
Case Code: 30107
(Personal Injury – other)

## COMPLAINT

NOW COMES Plaintiff, Jane Doe, a pseudonym, by and through her attorneys, CADE LAW GROUP LLC, as for their complaint against the Defendants, alleges and shows to the Court as follows:

### THE PARTIES

1. Plaintiff Jane Doe ("Plaintiff") is an adult citizen and resident of the State of Wisconsin. She is pursuing this claim under a pseudonym, because she was the victim of a sexual assault, as more fully identified below.

2. Defendant Board of Regents of the University of Wisconsin System ("Board") is the body created by the State of Wisconsin under Chapter 36 of the Wisconsin Statutes and Article X, Section 6 of the Wisconsin Constitution statute to oversee and manage the University of Wisconsin System, including the University of Wisconsin-

Milwaukee ("UWM"). The Board consists of 18 members who are responsible for establishing policies and rules that govern the campuses and institutions of the University of Wisconsin System. The address for service of process of the Defendant Board is 1860 Van Hise Hall, 1220 Linden Drive, Madison, WI 53706.

3. Defendant UWM is an institution of higher learning within the University of Wisconsin System, located in Milwaukee County, and is a branch of the government of the State of Wisconsin. It is an institution of higher learning that acts under the authority of the Board and is one of several campuses within the University of Wisconsin System. The headquarters of UWM for purposes of service of process is 2100 E. Kenwood Boulevard, Milwaukee, WI 53211. At all times material to this action, UWM owned, operated, managed, maintained, possessed, and controlled the residence halls, student housing facilities, and security personnel involved in the events giving rise to this action, and more specifically Kenilworth Square Apartments ("Kenilworth").

4. Defendant Sarath Pratapagiri ("Pratapagiri") is an adult resident of the State of Wisconsin. Upon information and belief, Pratapagiri was employed by UWM as a residence hall representative, front desk attendant, or in a substantially similar capacity at the residence hall involved in this action, working the service desk at Kenilworth, during the times alleged herein, and was responsible, in whole or in part, for monitoring the resident hall entrance, controlling access to the building, verifying the identities and authorization of visitors, enforcing residence hall security procedures, and/or otherwise performing duties relating to the safety and security of persons entering the residence hall. At all times relevant to this action, Pratapagiri was acting within the course and

scope of his employment with UWM. His only known address is his work address, which is c/o Accurate Controls, 420 E. Oshkosh Street Ripon WI 54971.

5. For all purposes herein, the Board is responsible for all the actions and inactions of UWM, including UWM employees and agents, and all actions of Board, UWM and Pratapagiri were under color of law.

6. Defendant Landmark Bars, Inc. d/b/a Landmark Lanes ("Landmark Lanes"), upon information and belief, is a Wisconsin corporation authorized to transact business in the State of Wisconsin and, at all times relevant to this action, owned, operated, managed, maintained, possessed, controlled, and/or occupied the premises commonly known as Landmark Lanes, located at 2220 North Farewell Avenue in Milwaukee, Wisconsin. At all times material to this action, Landmark Lanes operated its premises as a business open to members of the public, including Plaintiff. The agent for service of process for Landmark Lanes is Vyacheslav Tuzhilkov a/k/a Slava Tuzhilkov, 2400 W. Sunset Drive, Waukesha, WI 53189.

7. Defendant Vyacheslav Tuzhilkov a/k/a Slava Tuzhilkov ("Tuzhilkov") was at all relevant times the owner, manager, operator, supervisor, and/or person responsible for the operation, management, and security of Landmark Lanes during the events giving rise to this action. Upon information and belief, Tuzhilkov was acting within the course and scope of his ownership, management, and/or employment with Landmark Lanes and was responsible for supervising employees, maintaining safety and security of patrons, responding to disturbances occurring on or about the premises, and implementing and enforcing Landmark Lanes' security policies and procedures. Upon information and belief, Tuzhilkov has a home address of 3124 W. Grace Avenue, Mequon, WI 53092.

8. Defendant Randy Doe ("Randy"), whose true last name is presently unknown and who will be substituted upon discovery, was at all relevant times employed by Landmark Lanes as a bouncer, security employee, and/or agent responsible, in whole or in part, for maintaining the safety and security of Landmark Lane's patrons. Randy was acting within the course and scope of his employment and/or agency with Landmark Lanes at all times relevant to this action. His last known business address is 2220 N. Farwell Ave., Milwaukee, WI 53211.

9. Defendant Brendan Hoover ("Hoover") is an adult resident of the State of Wisconsin. Upon information and belief, Hoover was a resident of the Kenilworth residence hall at all times relevant to this action. Hoover is currently an incarcerated person with the Wisconsin Department of Corrections and is housed at the Oshkosh Correctional Institution, 1730 W. Snell Road, Oshkosh, WI 54901.

10. Defendant Heaven'l Parker ("Parker") is an adult resident of the State of Wisconsin. Upon information and belief, Parker was present in the residence hall room with Hoover during the events giving rise to this action. Parker resides at 3716 92nd Place, Sturtevant, WI 53177.

11. Defendant ABC Insurance Company ("ABC") is an insurance company authorized to conduct business in Wisconsin. Upon information and belief, ABC issued a policy of liability insurance applicable to Landmark Lanes and/or its employees, agents, and representatives during the relevant period. By the terms of said policy, ABC agreed to pay all sums for which Landmark Lanes and/or its agents and employees might be held legally liable for injuries or damages caused by Landmark Lanes and/or its employes and

agents. Upon information and belief, said insurance policy was in full force and effect during the events giving rise to this action.

12. Defendant DEF Insurance Company ("DEF") is an insurance company authorized to conduct business in Wisconsin. Upon information and belief, DEF issued a policy of liability insurance applicable to UWM and/or its employees, agents, and representatives during the relevant period. By the terms of said policy, DEF agreed to pay all sums for which UWM and/or its agents and employees might be held legally liable for injuries or damages caused by UWM and/or its employes and agents. Upon information and belief, said insurance policy was in full force and effect during the events giving rise to this action.

## JURISDICTION AND VENUE

13. This action is brought pursuant to the laws of the State of Wisconsin and presents claims that occurred within the jurisdiction of the Milwaukee County Circuit Court.

14. Venue is proper in Milwaukee County because the events giving rise to this action occurred in Milwaukee County and because one or more of the Defendants resides, conducts business, or otherwise may be found in Milwaukee County.

## STATEMENT OF FACTS

15. On the evening of February 2, 2204, Plaintiff arrived at Landmark Lanes to meet friends after work and celebrate her birthday.

16. Prior to arriving at Landmark Lanes, Plaintiff arranged with Randy, a Landmark Lanes' employee and bouncer, for Randy to provide her with a ride home after the bar closed, and Randy agreed to do so.

17. Plaintiff consumed alcoholic beverages at Landmark Lanes throughout the evening. Surveillance video from Landmark Lanes depicts Plaintiff stumbling, falling, and otherwise exhibiting obvious signs of intoxication.

18. Landmark Lanes' employees and agents, including Randy and other staff members, observed Plaintiff throughout the evening and knew, or in the exercise of reasonable care should have known, that Plaintiff was visibly intoxicated.

19. Plaintiff's intoxication rendered her particularly vulnerable and unable to adequately protect herself from foreseeable harm.

20. At approximately 2:00 a.m., when the bar closed, Landmark Lanes required patrons, including Plaintiff, to leave the establishment while employees remained inside to complete closing procedures.

21. Plaintiff exited the establishment and waited outside Landmark Lanes for Randy with Hoover and Parker, and other unknown individuals, while Randy and other employees closed the bar.

22. While waiting outside Landmark Lanes, and while visibly intoxicated and vulnerable, Plaintiff, Hoover, and Parker encountered another group of patrons waiting outside the establishment.

23. During that encounter, Plaintiff attempted to assist a female who was looking for her cellular phone. Moments later, without warning, Plaintiff was violently attacked by the unknown female.

24. The female repeatedly punched Plaintiff in her face, slammed her head against the pavement, and dragged her by her hair. Hoover and Parker witnessed the attack and did not attempt to intervene:


02-03-2024 Sat 02:39:15 AM


02-03-2024 Sat 02:39:19 AM


02-03-2024 Sat 02:39:21 AM

25. After the attack, Plaintiff was rendered unconscious for several minutes. It was later determined she had suffered serious facial injuries, including a fractured orbital socket, as a result of the attack. Parker and Hoover (wearing a hat) are the two males in the photograph observing Plaintiff on the ground after she was assaulted.




26. During the assault or immediately thereafter, Landmark Lanes' owner and/or manager, Tuzhilkov, became aware that a physical altercation had occurred outside the establishment.

27. Upon learning of the assault, Tuzhilkov directed Randy to go outside and determine what had occurred.

28. Randy (identified with a red circle), below, responded outside and personally observed Plaintiff and the aftermath of the assault, including that Plaintiff was unconscious:




29. Randy knew or should have known that Plaintiff had just been violently assaulted, had been rendered unconscious, was visibly intoxicated, was injured, and was incapable of adequately protecting herself or making reasoned decisions regarding her own safety. Further, Randy knew that Plaintiff had previously arranged for him to provide her with transportation home, and that he had agreed to do so.

30. Despite this knowledge and despite his prior agreement to transport Plaintiff safely home, Randy permitted Plaintiff to leave with Hoover and Parker while she remained injured, visibly intoxicated, impaired, and vulnerable.

31. Hoover and Parker thereafter held Plaintiff up, as she could not walk under her own power, and took Plaintiff to Kenilworth, where Hoover was a resident.


02-03-2024 Sat 02:44:44 AM
Entrance Facing N


02-03-2024 Sat 02:52:23 AM


02-03-2024 Sat 02:52:26 AM

32. Kenilworth is considered "on campus housing" of UWM, according to UWM's website:




33. Every residence hall of UWM, including Kenilworth, has a service desk, which is supposed to fully staffed and operated 24 hours per day, 7 days per week, 365 days per year:

Housing at UWM

On-Campus Housing · Off-Campus Housing · Housing Resources · About

Home · Services & Amenities · **Service Desks**

## Service Desks

The University Housing Service Desks are located in the lobbies of all University Housing Facilities. Service Desks are open 24 hours a day, when their buildings are open (year-round in Cambridge, Kenilworth, and Sandburg).

| | |
|---|---|
| Cambridge: 414-251-7891 | Kenilworth: 414-229-0512 |
| RiverView: 414-251-8328 | Sandburg: 414-229-6123 |

The following services are provided for residents:

- Lock changes and key-ins *(fee may apply)*.
- Facilitating purchases of Ethernet cables and replacement guest passes.
- Coordinating lost and found items.
- Check-out of the following items: community kitchen key-in access, recreational sporting equipment, board games, and cooking utensils. *(resident must present their Panther ID)*
- Loading money onto PantherCa$h accounts.
- Secured entry to all University Housing Facilities via Panther ID check and staffing of Tower monitors in Sandburg.

uwm.edu

## Service Desks

All Service Desks are open 24/7/365 when their respective buildings are open. These areas should serve as a primary resource for residents and the central location for emergency situations. Cambridge, Kenilworth and Sandburg Service Desks are located in first-floor lobbies. RiverView Service Desk is located on the third (main) floor of RiverView Residence Hall. Each desk accepts credit card or personal check as forms of payment for certain services.

University Housing Service Desks

Service Desks provide the following services for residents:

- Providing key replacements or room key-ins.
- Selling ethernet cables.
- Coordinating lost and found items.
- Checking out recreational equipment (basketballs, volleyballs, etc.), kitchen supplies and board games.
- Maintaining building safety.

34. In addition to requiring 24/7 operation of the service desk at Kenilworth, UWM also represented to the world that all residents of a UWM residence hall, including Kenilworth, are required to register their guests:

### Security

In order to facilitate a safe, comfortable environment that is conducive to academic study and personal growth, University Housing provides the following services:

- Residents are required to carry a UWM ID to enter the residence halls and Kenilworth Square Apartments.
- Security access locations are at the main entrance to all University Housing Facilites. In addition, Sandburg Hall utilizes access locations at the first-floor entrance to each tower during "open lobby" hours.
- Residents are required to register guests, accompany their guests at all times, and be responsible for the actions of their guests. (See G2 in the Rules and Regulations portion of this Handbook.)
- Cambridge Commons and RiverView security staff members check IDs at the building entrance 24 hours a day.
- Sandburg security staff members check IDs at the tower entrances from 9 a.m. to 6 p.m. on weekday class days, and at the lobby entrance at all other times (subject to change). Walking past access locations without presenting your ID is against policy.
- Deadbolt locks are installed on both room and suite doors. Residents are expected to lock their doors at all times.

Security staff and RAs are present throughout residence halls 24 hours a day to meet the needs of residents. To contact Security, call your Service Desk:

Cambridge: 414-251-7891 | Kenilworth: 414-229-0512 | RiverView: 414-251-8328 | Sandburg: 414-229-6123

35. In addition, UWM also represented to the world that all guests entering a UWM residence hall, including Kenilworth, are required to create a GuestPass account, present a valid Photo ID, provide personal information to UWM, and carry said GuestPass with them at all times.

uwm.edu

**GuestPass System**

Every guest coming through UWM residence hall doors are required to create a GuestPass account and carry their GuestPass card with them at all times. All guests of University Housing must abide by university policy and regulations at all times. If a guest violates a policy their GuestPass privileges may be revoked for an allotted amount of time.

To register for a GuestPass account each person must provide a valid photo ID, take a picture with Housing staff/upload a picture themselves, and provide personal information to our database. GuestPasses are valid for four years. A guest will need to repurchase a GuestPass if it is lost and/or the current card is not present when checking in.

36. In addition to the GuestPass system, residents of Kenilworth had a "preferred guest policy", which allows residents of Kenilworth "to place up to five (5) persons on a 'guest list. These guests are allowed to go to and from a resident's apartment without being escorted by their [resident] host, provided they showed proper ID at the service desk when they arrive.":

uwm.edu

**Preferred Guest Policy—Kenilworth Only**

The preferred guest policy allows a Kenilworth Square Apartment resident to place up to five (5) people on a "guest list." These guests are allowed to go to and from a resident's apartment without being escorted by their host, provided they show proper ID at the Service Desk when they arrive.

This is how the program works:

The University Housing resident behavior process is a part of community development within the residence halls at UWM. Members of a community have both rights and responsibilities. Inherent to the success of the University Housing resident behavior process is an awareness by residents of the need to acknowledge their responsibility for their behavior and how it affects the community in which they live. Primary emphasis is placed on the educational and developmental progress of the resident and is part of the educational mission of the university. Increased understanding of self and others has the strongest potential for educational impact. This process is designed, in part, to determine responsibility (or lack thereof) for violations of the University Housing Rules and Regulations—not guilt or innocence relative to criminal matters.

The University Housing resident behavior process is not equivalent to, nor does it conform to criminal law processes. The University Housing resident behavior process is informal in nature so as to provide substantial justice, fair proceedings, and educational and developmental outcomes. It is not bound by legal jargon, court-like proceedings, nor legal definitions. The technical rules of evidence applicable in civil and criminal cases do not apply. This Resident Handbook and associated policies are supported by and incorporate, by reference, the UWM Student Code of Conduct.

37. Plaintiff was allowed to enter Kenilworth without a GuestPass or without having to register for a GuestPass.

38. Plaintiff was not a resident of Kenilworth. Plaintiff also was not a preferred guest or one of Hoover's preferred guests.

39. Parker was not a resident of Kenilworth. Parker also was not a preferred guest or one of Hoover's preferred guests.

40. Upon arriving at Kenilworth, Hoover gained access to Kenilworth and entered Kenilworth with Parker and Plaintiff by using his resident credentials.







2/3/2024 2:54:39 AM


2/3/2024 2:54:39 AM

41. At the time Hoover, Parker, and Plaintiff entered the residence hall, there was UWM employee working the front desk who was responsible for monitoring access to the facility. Upon information and belief, that employee was Sarath Pratapagiri.

42. Pratapagiri failed to require Plaintiff to present identification or a GuestPass.

43. Pratapagiri failed to require Parker to present identification or a GuestPass.

44. Pratapagiri failed to determine whether Plaintiff or Parker were authorized visitors before permitting them to proceed into the residence hall.

45. Pratapagiri therefore permitted Plaintiff, a non-resident, to proceed through the residence hall without verifying her identity or authorization to be inside the facility.

46. Likewise, Pratapagiri permitted Parker, a non-resident, to proceed through the residence hall without verifying his identity or authorization.



47. Residence hall surveillance video depicts Plaintiff entering the building and while visibly impaired, unable to walk steadily, stumbling, leaning on Hoover for support, and requiring assistance from Hoover and Parker to remain upright, subsequently entering the elevator.









48. Plaintiff's condition was sufficiently apparent that a person observing her would have reason to believe that she was severely impaired and incapable of adequately protecting herself.

49. Despite Plaintiff's obvious condition, Pratapagiri did not stop Plaintiff to determine her identity, authorization to enter, destination, relationship to Hoover, or need for assistance.

50. Plaintiff was thereafter escorted by Hoover and Parker through the residence hall and into Hoover's dormitory room at Kenilworth.

51. Plaintiff has no memory of traveling from Landmark Lanes to Kenilworth.

52. Plaintiff has no memory of entering Kenilworth or Hoover's dormitory room.

53. Plaintiff awoke the following morning inside Hoover's dormitory room with significant injuries to her face and head.

54. Upon awakening, Plaintiff learned from Hoover that she had been assaulted outside Landmark Lanes while waiting for Randy to provide her transportation home.

55. Plaintiff further learned from Hoover that she had been brought to Hoover's dormitory room while unconscious, incapacitated, intoxicated, and/or otherwise incapable of protecting herself.

56. Plaintiff further learned from Hoover that she had been sexually assaulted by Hoover and Parker after she was brought to Hoover's dormitory room.

57. Plaintiff had no recollection of engaging in any sexual activity with Hoover or Parker.

58. Plaintiff did not knowingly, voluntarily, or affirmatively consent to sexual intercourse or sexual activity with Hoover or Parker.

59. Medical examination later revealed injuries consistent with a recent sexual assault.

60. UWM has a policy of barring sexual assaults on campus.

uwm.edu

**Sexual Assault, Dating/Domestic Violence & Stalking**

The University of Wisconsin-Milwaukee prohibits all forms of sexual violence, including, but not limited to, sexual assault, sexual harassment, dating and domestic violence, stalking and other sex offenses on University property or in conjunction with University activities. Wisconsin statutes define these offenses, which are described in this section for informational purposes only.

**Sexual Harassment**

Sexual harassment as defined in Wisconsin Statute section 111.32(13) and by UWM's sexual harassment policy, includes unwelcome sexual advances, requests for sexual favors, and other verbal, written (including electronic or graphic) or physical conduct of a sexual nature where the two parties are of unequal power. Harassment between equals is also possible. Conduct which unreasonably interferes with an individual's work or educational performance or which creates an intimidating, hostile, or offensive environment for work or learning also constitutes sexual harassment. UWM policy prohibits all sexual harassment including consenting amorous or sexual relationships between an instructor and a student under their current tutelage or between an employee and their direct supervisor. The penalties for sexual harassment by a UWM employee may include any of the following: a fine, job suspension or termination, letters of reprimand or warning, or reassignment.

**Sexual Assault**

Sexual assault is any sexual contact made without consent. Consent must be freely given with overt words or actions that clearly communicate an individual's desire to engage in sexual activities. Consent is a freely given agreement, not the absence of a no. Consent cannot legally be obtained if an individual is incapacitated due to alcohol or other drugs, is unconscious or asleep, or has limited mental capacity. Examples of sexual assault include unwanted touching, fondling, or penetration of the mouth, vagina, or anus with a finger, penis, or object.

61. The actions of Hoover in sexually assaulting Plaintiff are in direct contradiction to Hoover's contract with UWM for use of his dormitory room at Kenilworth.

62. After Plaintiff, Hoover, and Parker went to Hoover's dorm room, Pratapagiri remained at the service desk until 3:00 a.m. and then left his post and entered the elevator at Kenilworth.









63. As a direct and proximate result of the acts and omissions described above, Plaintiff suffered severe physical injuries, emotional distress, psychological trauma,

medical expenses, lost wages, loss of earning capacity, pain and suffering, and other damages.

**COUNT 1 – 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT (Against Board, UWM and Pratapagiri)**

64. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

65. The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

66. UWM placed its employees, including Pratapagiri, as service desk assistants, who were solely tasked with making sure only students entered a residential dormitory, such as Kenilworth, unless they were signed in as guests and presented identification.

67. Plaintiff was never signed in or presented identification prior to her rape.

68. Parker was never signed in or presented identification prior to him committing the rape.

69. Pratapagiri never required Hoover to sign in either Plaintiff or Parker before Plaintiff was taken up to Hoover's room and sexually assaulted for several hours.

70. Upon information and belief, UWM knew that the Kenilworth dorm was in an urban environment and the residents of Kenilworth needed extra security to prevent individuals from entering Kenilworth who did not have a legal right to be present.

71. Pratapagiri's actions in not requiring signatures or identification of either Plaintiff or Parker, was "objectively unreasonable" under the totality of the circumstances.

72. The failure to follow the procedure with regards to guests entering the dormitory caused the sexual assault of Plaintiff, as Pratapagiri was deliberately indifferent to who did or did not enter Kenilworth, and in violation of the Constitution.

73. That as a direct and proximate result of Defendants deliberate, willful, wanton, and reckless violations of Plaintiff's Constitutional Rights, Plaintiff suffered a sexual assault, extreme pain and suffering, as well as compensatory damages as a result of these violations, in an amount to be determined at trial.

**COUNT 2 – 42 U.S.C. § 1983 – FAILURE TO INTERVENE IN VIOLATION OF THE FOURTEENTH AMENDMENT (Against Board, UWM and Pratapagiri)**

74. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

75. Pratapagiri had a very realistic opportunity to intervene and protect Plaintiff from Hoover and Parker, had he just asked for identification or required Plaintiff to sign up for a GuestPass.

76. Pratapagiri failed to take reasonable steps to prevent harm to Plaintiff.

77. Had Pratapagiri taken said actions, he would have, consistent with his training, determined that Plaintiff was not a student of UWM or a resident of Kenilworth,

or any other dorm at UWM, and was heavily intoxicated, and potentially the subject of trafficking or assault.

78. Pratapagiri's actions were within the scope of his employment with UWM, and UWM and/or Board is liable to Plaintiff for any damages, attorney's fees or costs.

79. Plaintiff suffered a sexual assault, extreme pain and suffering, as well as compensatory damages as a result of these violations, in an amount to be determined at trial.

**COUNT 3 – VIOLATION OF TITLE IX (20 U.S.C. §1681 (a)**
**(Against Board and UWM)**

80. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

81. Title IX of the Education Amendments of 1972 states:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681(a)."

82. Title IX's prohibitions on sex discrimination extend to "any academic, extracurricular, research, occupational training or other educational program operated by a recipient" of Federal funding. 34 C.F.R. § 106.31.

83. UWM and Board operates educational institutions, including UWM, that provide programs and activities which receive Federal financial assistance and, thus, are subject to Title IX obligations.

84. Although Plaintiff was not a student at UWM, the ambit and protections of Title IX apply to her.

85. Plaintiff was discriminated against based on her sex when she was sexually assaulted at the Kenilworth dormitory by Hoover, a student at UWM, because UWM had a Preferred Guest Policy, applicable only to Kenilworth that, among other things, according to UWM, had an educational component to it and part of UWM's educational mission, which by its very nature, applied to guests of Kenilworth residents who were the only ones allowed to participate in the program:

> "Inherent to the success of the University Housing resident behavior process is an awareness by residents of the need to acknowledge their responsibility for their behavior and how it affects the community in which they live. Primary emphasis is placed on the educational and developmental progress of the resident and is part of the educational mission of the university. Increased understanding of self and others has the strongest potential for educational impact."

86. As a guest of Hoover, upon information and belief, the Preferred Guest Policy applied to Plaintiff, and by failing to monitor the service desk and demand identification from Plaintiff, Pratapagiri, UWM and Board discriminated against Plaintiff.

**COUNT 4 – BREACH OF CONTRACT (Third-Party Beneficiary)**
**(Against Board and UWM)**

87. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

88. Hoover and UWM had a contract for Hoover's dormitory room at Kenilworth.

89. The contract included all the provisions of UWM's Rules and Regulations, including the UWM Resident Handbook.

90. Plaintiff, as a guest of Hoover, was a third-party beneficiary of the Contract, entitled to all the rights and responsibilities owed by UWM and the Board, under the Contract.

91. UWM and Board, through Pratapagiri, breached the Contract by failing to require Plaintiff to register for a GuestPass, check her identification, or verify that she was a willing guest of Hoover.

92. Had Pratapagiri actually complied with his responsibilities under the Contract, Plaintiff would not have been allowed to go to Hoover's dormitory room at Kenilworth.

93. Because of the Breach, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $5,000,000.

**COUNT 5 – NEGLIGENCE AND NEGLIGENT SECURITY**
**(Against Landmark Lanes and Tuzhilkov)**

94. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

95. Tuzhilkov was the owner, operator, possessor, and/or occupier of the premises at issue.

96. Plaintiff was a business invitee of Landmark Lanes and was entitled to the exercise of reasonable care for her safety while on and immediately outside the premises under circumstances in which Tuzhilkov and Landmark Lanes knew or should have known that Plaintiff was particularly vulnerable.

97. Tuzhilkov and Landmark Lanes owed Plaintiff a duty to exercise reasonable care under the circumstances, including reasonable care in supervising its premises, employees, patrons, and activities occurring on or immediately adjacent to the premises.

98. Tuzhilkov and Landmark Lanes further owed Plaintiff a duty to take reasonable measures to protect its patrons from foreseeable risks of harm, including the

risk of physical violence and assault occurring during or immediately following the closing of its establishment.

99. Tuzhilkov and Landmark Lanes knew or should have known that patrons leaving the establishment at closing time could be exposed to foreseeable risks of confrontation, altercation, assault, and other criminal or violent conduct.

100. Tuzhilkov and Landmark Lanes knew that Plaintiff had consumed alcohol throughout the evening an knew or should have known that Plaintiff was visibly intoxicated and vulnerable.

101. Tuzhilkov and Landmark Lanes' employees and agents observed Plaintiff's condition throughout the evening, including her inability to walk steadily, her stumbling, and other obvious manifestations of intoxication.

102. Prior to Plaintiff's departure from Landmark Lanes, Plaintiff had arranged with Randy, Tuzhilkov and Landmark Lanes' bouncer and employee, for Randy to transport Plaintiff home after the bar closed.

103. Tuzhilkov and Landmark Lanes knew or should have known that Plaintiff intended to remain outside the establishment awaiting Randy and that Plaintiff was dependent upon Randy to provide her transportation home.

104. Rather than ensuring Plaintiff safely departed with Randy, Tuzhilkov and Landmark Lanes permitted Plaintiff to remain outside the establishment with Hoover and Parker while Landmark Lanes' employees remained inside completing closing procedures.

105. Tuzhilkov and Landmark Lanes failed to maintain adequate supervision of Plaintiff and the surrounding area during bar closing.

106. Tuzhilkov and Landmark Lanes failed to take reasonable steps to ensure that Plaintiff, who was visibly intoxicated and vulnerable, safely departed the premises.

107. Tuzhilkov and Landmark Lanes failed to adequately monitor the patrons gathered outside its establishment during closing.

108. Tuzhilkov and Landmark Lanes failed to timely intervene when circumstances outside its establishment created a foreseeable risk of violence to Plaintiff.

109. Tuzhilkov and Landmark Lanes, by its owner and/or manager, Tuzhilkov, became aware that a physical altercation had occurred outside the establishment.

110. Upon learning of the altercation, Tuzhilkov and Landmark Lanes directed Randy to investigate the disturbance.

111. Randy thereafter personally observed Plaintiff following the assault and observed her physical and mental condition.

112. At that time, Tuzhilkov and Landmark Lanes, through their employees and agents, knew or should have known that Plaintiff had been violently assaulted, had been rendered unconscious, was visibly intoxicated, was injured, and was incapable of adequately protecting herself.

113. Despite this knowledge, Tuzhilkov and Landmark Lanes failed to take reasonable measures to protect Plaintiff, including ensuring that she received medical attention, ensuring that she safely departed with Randy as previously arranged, or otherwise preventing her from leaving in a vulnerable condition with Hoover and Parker.

114. Tuzhilkov and Landmark Lanes further failed to maintain and enforce reasonable policies and procedures governing the supervision and protection of visibly

intoxicated patrons during closing and after an altercation occurred immediately outside the premises.

115. Tuzhilkov and Landmark Lanes' acts and omissions constituted a failure to exercise reasonable care under the circumstances.

116. The assault and resulting injuries to Plaintiff were a foreseeable consequence of Tuzhilkov and Landmark Lanes' failure to exercise reasonable care in supervising and protecting Plaintiff.

117. As a direct and proximate result of Tuzhilkov and Landmark Lanes' negligence and negligent security, Plaintiff suffered physical injuries, emotional distress, psychological trauma, medical expenses, lost wages, loss of earning capacity, pain and suffering, and other damages.

**COUNT 6 – PREMESIS LIABILITY**
**(Against Landmark Lanes and Tuzhilkov)**

118. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

119. Tuzhilkov and Landmark Lanes was the owner, operator, possessor, and/or the occupier of the premises at issue.

120. Tuzhilkov and Landmark Lanes owed Plaintiff, as a lawful patron and business invitee, a duty to exercise ordinary care to maintain its premises in a reasonably safe condition and to protect patrons from known or reasonably foreseeable dangers.

121. The circumstances existing outside of Landmark Lanes during closing, including the presence of multiple patrons, Plaintiff's obvious intoxication and vulnerability, and the occurrence of an altercation immediately outside the establishment, constituted conditions creating a foreseeable risk of harm to Plaintiff.

122. Tuzhilkov and Landmark Lanes knew, or in the exercise of reasonable care, should have known of the dangerous conditions and circumstances existing outside its premises.

123. Tuzhilkov and Landmark Lanes failed to exercise reasonable care to protect Plaintiff from those conditions by failing to adequately supervise the area outside its establishment during closing, by failing to monitor the conduct and interactions of patrons congregating outside its premises, by failing to take reasonable steps to protect Plaintiff after learning that she had been assaulted and rendered unconscious, and by failing to ensure Plaintiff was safely transported from the premises after it knew or should have known that Plaintiff was injured, intoxicated, and incapable of protecting herself.

124. As a direct and proximate result of Tuzhilkov and Landmark Lanes' failure to exercise reasonable care, Plaintiff was violently assaulted, knocked unconscious, left in an incapacitated condition, and placed in a position of extreme vulnerability that directly and foreseeably led to the subsequent injuries alleged herein.

**COUNT 7 - VIOLATION OF WIS. STAT. § 101.11 (Safe Place Claim)**
**(Against Landmark Lanes and Tuzhilkov)**

125. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

126. Landmark Lanes is considered an "employer" as that term is defined in Wis. Stat. § 101.11.

127. Landmark Lanes and/or Tuzhilkov is considered an "owner" as that term is defined in Wis. Stat. §101.11.

128. Landmark Lanes is considered a "place of employment" and a "public building" as those terms are defined in Wis. Stat. § 101.11.

129. Plaintiff is considered a "frequenter" as that term is defined in Wis. Stat. §101.11.

130. By failing to keep up the premises, including monitoring the outside area of the bar for fights and other disturbances, Defendants violated the Wisconsin Safe-Place Statue, Wis. Stat. § 101.11.

131. As a result of these Defendants' violation of the Wisconsin Safe-Place Statue, Plaintiff suffered damages in an amount to be determined at trial.

**COUNT 8 – NEGLIGENT HIRING, TRAINING AND SUPERVISION**
**(Against Landmark Lanes)**

132. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

133. Landmark Lanes hired Randy as an employee, including working as a bouncer.

134. Landmark Lanes knew or reasonably should have known that Randy would be called to act in a number of situations, including monitoring the entrance to the establishment as well as monitoring the security cameras at the establishment.

135. Landmark Lanes also knew or reasonably should have known that Randy would be called to take other actions, including possibly calling a cab or ride-share service for patrons who were visibly intoxicated.

136. Landmark Lanes also knew or reasonably should have known that Randy would be called to act to break up fights within and just outside of the establishment.

137. Despite this knowledge, Randy failed to properly act within his role as an employee of Landmark Lanes.

138. Thus, Landmark Lanes, through the inactions of Randy, breached its duty of care to Plaintiff.

139. But for the failure of Landmark to properly hire, train and supervise Randy, Plaintiff would not have suffered her injuries, great conscious pain and suffering, emotional distress and other forms of damages.

140. As a result of the failure on the part of the owners, agents, servants, and employees of Landmark Lanes to provide the necessary training, supervision, and hiring of Randy, Plaintiff has sustained damages in an amount to be determined at trial.

**COUNT 9 - RESPONDEAT SUPERIOR**
**(Against Landmark Lanes and Tuzhilkov)**

141. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

142. Landmark Lanes and/or Tuzhilkov is liable for the actions of Randy under a theory of respondeat superior.

143. At all material times, Randy was an employee of Landmark Lanes and/or Tuzhilkov.

144. At all material times, Randy was acting within the scope of his employment.

145. At all material times, Randy, while acting as an employee, also was guided by his desire to benefit his employer.

146. At all material times, Landmark Lanes, whether individually or collectively, had the ability to stop and protect Plaintiff from being assaulted outside of Landmark Lanes through a series of methods and training.

147. Under respondeat superior, Landmark Lanes is strictly and/or vicariously liable for Randy's failure to protect Plaintiff.

148. Plaintiff has been damaged in an amount to be determined at trial.

**COUNT 10 – CIVIL LIABILITY FOR SEXUAL ASSAULT IN VIOLATION OF WIS. STATS. §940.225 (2)(b) and §940.225 (2)(c)**
**(Against Hoover and Parker)**

149. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

150. While under the influence of alcohol, Plaintiff was sexually assaulted by Hoover and Parker.

151. Plaintiff did not consent to Hoover or Parker's actions.

152. The conduct and actions of Hoover and Parker, including the sexual assault of Plaintiff, constitutes an intentional and offensive touching of Plaintiff to which Plaintiff did not consent.

153. As a direct and proximate result of the intentional acts of Hoover and Parker, Plaintiff experienced pain, suffering, mental anguish, physical injury, unnecessary medical care and expenses, lost wages, future wages, and was otherwise injured and damaged.

**COUNT 11 – CIVIL LIABILITY FOR BATTERY IN VIOLATION OF WIS. STAT. §940.19**
**(Against Hoover and Parker)**

154. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

155. At all relevant times, Plaintiff was unconscious, incapacitated, severely intoxicated, physically injured, and/or otherwise incapable of knowingly and voluntarily consenting to sexual contact.

156. Defendants had been with Plaintiff all night at Landmark Lanes, including when she was physically assaulted and rendered unconscious, and therefore knew or should have known of Plaintiff's condition.

157. Defendants intentionally engaged in sexual contact with Plaintiff while she was unconscious, incapacitated, intoxicated, and/or otherwise incapable of providing knowing and voluntary consent.

158. Plaintiff did not knowingly, voluntarily, or affirmatively consent to sexual contact with Defendants.

159. Defendants intentional touching of Plaintiff in a sexual manner where Plaintiff could not consent to the sexual touching, and the sexual touching was harmful and offensive, constitutes battery under Wisconsin law.

160. As a direct and proximate result of Defendants' intentional acts, Plaintiff experienced pain, suffering, mental anguish, physical injury, unnecessary medical care and expenses, lost wages, future wages, and otherwise injured and damaged, in an amount to be determined at trial.

**COUNT 12 – DIRECT ACTION AGAINST INSURER**
**PURSUANT TO WIS. STAT. § 628.48**
**(Against ABC and DEF Insurance Company)**

161. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully stated herein.

162. Defendant ABC Insurance Company is liable to Plaintiff for damages suffered as a result of Landmark Lanes, Tuzhilkov or Roe's actions and inactions, as alleged in this Complaint, up to the amount of the applicable insurance policy that these defendants have with ABC.

163. Defendant EFG Insurance Company is liable to Plaintiff for damages suffered as a result of the Board, UWM and/or Pratapagiri's actions and inactions, as alleged in this Complaint, up to the amount of the applicable insurance policy that the Board, UWM and/or Pratapagiri has with DEF.

164. At all material times and upon information and belief, all non-insurance defendants had in full force and effect one or more policies of insurance that provided coverage to them, insuring them against liability for their negligence and the negligence of their agents and employees, and agreeing to pay any and all amounts that Defendants and their agents and employees may become legally obligated to pay for the aforementioned damages.

165. Pursuant to Wis. Stat. § 803.04, Defendants ABC and DEF are proper parties to this action. Pursuant to Wisconsin's Direct-Action Statue, Wis. Stat. § 632.24, Plaintiff is allowed to maintain this lawsuit directly against Defendants ABC and DEF.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully demands relief, jointly and severally against all Defendants, as follows:

a. Compensatory damages for the physical, emotional, and economic injuries suffered by Plaintiff by reason of the Defendants' unjustified, excessive, and unreasonable actions and policies, in an amount fair, just, and reasonable and in conformity with the evidence at trial;

b. Compensatory damages for Plaintiff for her assault and battery in an amount fair, just, and reasonable and in conformity with the evidence at trial;

c. Punitive and exemplary damages to the extent allowable by law;

d. Attorneys' fees and costs as allowed; and

e. Such other and further relief as appears just and proper.

f. That the governmental agencies are liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the Defendant(s) in this action because Defendants were acting within the scope of their employment when they committed the above-mentioned actions.

**PLAINTIFF DEMANDS A TRIAL BY JURY OF TWELVE**

Dated this 8th day of October, 2026.

**CADE LAW GROUP, LLC**
Attorneys for Plaintiff

By: *Electronically signed by Nathaniel Cade, Jr.*

Nathaniel Cade, Jr. SBN: 1028115
Annalisa Pusick, SBN: 1116379
PO Box 170887
Milwaukee, WI 53217
P: (414) 255-3802
F: (414) 255-3804
E: nate@cade-law.com
E: annalisa@cade-law.com